_____

DR. AUDREY CUFF,                    1:18-cv-13122-NLH-AMD

          Plaintiff,          **OPINION**

    v.

CAMDEN CITY SCHOOL DISTRICT
and LARRY JAMES,

          Defendants.

_____

**APPEARANCES**:

PETER M. KOBER
1864 RTE 70 EAST
CHERRY HILL, NJ 08003

    _On behalf of Plaintiff_

RICHARD L. GOLDSTEIN
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
15000 MIDLANTIC DRIVE
SUITE 200
P.O. BOX 5429
MOUNT LAUREL, NJ 08054

    _On behalf of Defendants_

**HILLMAN**, District Judge

    This case concerns claims by Plaintiff, a special education teacher, that Defendants violated New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. ("CEPA"), as well as violated her First Amendment and Equal Protection rights. Presently before the Court is the motion of Defendants to dismiss Plaintiff's complaint in its entirety. For the

reasons expressed below, Defendants' motion will be granted.

**BACKGROUND**

As of June 2017, Plaintiff, Dr. Audrey Cuff, who claims to be "highly qualified to teach Language Arts and Mathematics as a special education teacher in a self-contained classroom,"[1] was employed as a non-tenured special education teacher by Defendant Camden City School District.  On June 18, 2017, Plaintiff met with the new Woodrow Wilson High School Principal, Defendant Larry James.  Plaintiff claims that James stated to her that he had reviewed her qualifications and noted that Plaintiff was highly qualified in the field of special education, and that she was more qualified than him.

On June 21, 2017, Plaintiff received her teaching schedule, which provided that she would teach Language Arts as a special education teacher in a self-contained classroom at Woodrow Wilson.  Three days later, on June 24, 2017, Plaintiff received a new schedule which kept her at Woodrow Wilson but assigned her to teach Health and Chemistry as a special education teacher in a classroom shared with a general education teacher.

Plaintiff claims that the new assignment was demeaning, and in effect a demotion, because her new assignment did not take

---

[1] "Unlike inclusion classrooms, self-contained classrooms educate only special needs children."  D.F. v. Collingswood Borough Bd. of Educ., 694 F.3d 488, 491 n.2 (3d Cir. 2012).

into account her high level of qualifications in the field of special education, her specialization of teaching Language Arts and Mathematics to special education students in a self-contained classroom, and her prior record of excellence in teaching in that capacity. Plaintiff further claims that her placement in a shared classroom was an inappropriate use of government funds and a deprivation of her students' rights to have the highest level of quality special education teaching. Plaintiff additionally claims that James's reassignment of Plaintiff was motivated by an irrational "show of power" over Plaintiff because she had higher qualifications than James.

On July 24, 2017, Plaintiff sent an email to "Lead Educator R. Martinez" expressing her opposition to her reassignment. On July 25, 2017, Plaintiff spoke with James about her reassignment who Plaintiff claims told her she was not qualified to teach special education students in the self-contained classroom, a characterization Plaintiff claims is a pretext for James's alleged "show of power."

On August 2, 2017, Plaintiff requested a transfer to a different school. Plaintiff claims that the principal of that school agreed to have Plaintiff teach in a self-contained classroom there, but the transfer was subject to approval by James. Plaintiff claims that James denied Plaintiff's transfer request.

On September 9, 2017, Plaintiff claims that James offered her a different assignment. Plaintiff would keep her shared classroom in Science, but she would have a self-contained classroom for special education students in Creative Writing and Psychology, upon the condition that Plaintiff would write the curricula for both courses by September 11, 2017.

Plaintiff claims that after she wrote the curricula in two days, James removed her from the Creative Writing class, and instead placed her in a shared classroom in Health. Plaintiff claims that this was demeaning and again motivated by a show of power over her.

On September 12, 2017, Plaintiff sent an email to Central Administrator Lead Educator Dr. Michael Coleman to express her opposition to James's September 11, 2017 reassignment. Plaintiff claims that Dr. Coleman informed James about Plaintiff's opposition. On September 18 and 20, 2017, Plaintiff claims that even though James told Plaintiff that he would be ordering textbooks for her special education psychology class, they were unreasonably delayed by James.

On September 30, 2017, Plaintiff wrote an email to Ms. Buell-Alvis, Central Administration Affirmative Action Coordinator. Plaintiff complained about her reassignments and expressed frustration over James's delay in obtaining the psychology text books, stating that she could not teach her

students effectively because of James withholding her books. Months later, toward the end of the school year on May 9, 2018, Plaintiff's employment with the Camden City School District was not renewed.

Based on the foregoing, Plaintiff claims that the Camden City School District and James have violated CEPA and Plaintiff's First Amendment and Equal Protection rights by subjecting her to numerous adverse employment actions despite her protected activity, which included voicing her opposition to her reassignments and informing the affirmative action coordinator about her inability to effectively teach her class due to the withholding of her textbooks. Defendants have moved to dismiss Plaintiff's complaint on all counts. Plaintiff has opposed Defendants' motion.

**DISCUSSION**

**A.  Subject matter jurisdiction**

This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

**B.  Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as

true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

6

<u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." <u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 684 ("Our decision in <u>Twombly</u> expounded the pleading standard for 'all civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before <u>Twombly</u>."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. <u>S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document." Pension Benefit Guar. Corp.
v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.
1993). If any other matters outside the pleadings are presented
to the court, and the court does not exclude those matters, a
Rule 12(b)(6) motion will be treated as a summary judgment
motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

    C.    **Analysis**

        1.   *Plaintiff's CEPA claims*

New Jersey's CEPA is designed to "'prevent retaliation
against those employees who object to employer conduct that they
reasonably believe to be unlawful or indisputably dangerous to
the public health, safety or welfare.'" Watts v. Township of
West Orange, 2018 WL 944023, at *3 (N.J. Super. App. Div. 2018)
(quoting Mehlman v. Mobil Oil Corp., 707 A.2d 1000, 1015 (N.J.
1998)). "[T]he offensive activity must pose a threat of public
harm, not merely private harm or harm only to the aggrieved
employee." Id. (citing N.J.S.A. 34:19-3).

CEPA is remedial legislation, and it "prohibits an employer
from taking 'retaliatory action' against an employee for
protected conduct." Id. (citing Maimone v. City of Atlantic
City, 903 A.2d 1055, 1063 (N.J. 2006). "Retaliatory action" is
defined by CEPA to mean "the discharge, suspension or demotion
of an employee, or other adverse employment action taken against
an employee in the terms and conditions of employment."

N.J.S.A. 34:19-2e.

Plaintiff here has asserted claims for violations of one subsection of CEPA, which provides:

> An employer shall not take any retaliatory action against an employee because the employee . . .
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
>
> (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3c.

A plaintiff who brings a cause of action pursuant to N.J.S.A. 34:19-3c must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003).

In this case, Plaintiff argues that she has stated a viable Section c(1)/c(2) claim against Defendants arising from her opposition to her teaching assignments in July 2017 and September 2017.  Plaintiff claims that James's teaching placements constituted official misconduct which is a crime of the second degree:  "A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit . . . a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner."  N.J.S.A. 2C:30-2a.

Plaintiff claims that James, as a public servant and through an unauthorized exercise of his official function, reassigned Plaintiff, and by doing so deprived her of a benefit, which was a teaching position commensurate with her qualifications and experience.  Plaintiff claims that she was reasonable in her belief that James was violating N.J.S.A 2C:30-2a, and when she voiced her objections to her improper teaching assignments, James retaliated against her by not renewing her teaching contract in May 2018.  (Docket No. 1-3 at 9, Count I.)

Plaintiff also argues that she has stated a viable Section c(3) claim against Defendants arising from her concerns that her assignments and lack of textbooks harmed the public school

10

students. Plaintiff claims that when James did not permit her
to transfer to a different school he violated her equal
protection rights by treating her differently from other
teachers, as evidenced by a music teacher's transfer in
September 2017. Plaintiff further claims that James violated
her equal protection rights by being treated differently from
other special education teachers because they had self-contained
classrooms and she did not. Plaintiff claims that when she
voiced her concerns about her disparate treatment, she was
retaliated against when her employment was not renewed in May
2018. (Docket No. 1-3 at 11-12, Count II.)

Plaintiff also claims that by not being assigned a self-
contained classroom or timely provided with the psychology
textbooks, Defendants violated the students' rights to receive a
thorough, efficient, and appropriate education under the New
Jersey constitution and the Individuals with Disabilities
Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(A). Plaintiff
claims that when she expressed her reasonable belief that
Defendants' actions were harming the students, Defendants
retaliated against her by not renewing her employment in May
2018.[2] (Docket No. 1-3 at 12-15, Count III and Count IV.)

---

[2] Plaintiff also claims that the expression of her concerns
constituted First Amendment protected speech, and Defendants'
retaliation for that exercise of free speech violated section
c(3) of CEPA. (Docket No. 1-3 at 16-17.) It appears that

11

None of Plaintiff's CEPA claims are viable. Accepting as true that each reassignment and the delay in textbooks, along with her non-renewal in May 2018, were adverse employment actions,[3] Plaintiff has failed to meet the first two elements of an actionable CEPA claim.

For the first element, Plaintiff does not allege that she expressed to James and the other administrators that her teaching assignments and lack of textbooks constituted violations of specific laws or public policy to which she objected. Even though section 3c(1) of CEPA does not require that the activity complained of be an actual violation of a law or regulation – a reasonable belief is enough - "when a plaintiff brings an action pursuant to N.J.S.A. 34:19-3c, the trial court must identify a statute, regulation, rule, or public

Plaintiff contends that she was retaliated against for her free speech – i.e., blowing the whistle – and such speech was about James's retaliation against her for that speech. This claim is circular and does not state a CEPA claim. The Court considers Plaintiff's First Amendment claim separately from her CEPA claim. (Docket No. 1-3 at 18-19, Count VII.)

[3] To qualify as an adverse employment action under CEPA, an employer's action must have had a significant impact on the employee's compensation or rank. Thorn v. Township of Cranford, 2007 WL 845890, at *3 (N.J. Super. Ct. App. Div. 2007) (citing Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360 (App. Div. 2002). Not every employment action that makes an employee unhappy constitutes an actionable adverse action. Id. (citing Cokus v. Bristol-Myers Squibb Co., 362 N.J. Super. 366, 378 (Law Div.2002), aff'd, 362 N.J. Super. 245 (App. Div.), cert. denied, 178 N.J. 32 (2003)).

policy that closely relates to the complained-of conduct."
Dzwonar, 828 A.2d at 901.  CEPA does not require any magic words
in communicating an employee's reasonable belief of illegal
activity, Cotto v. Newark Public Schools, 2019 WL 1084233, at
*10 (N.J. Super. Ct. App. Div. 2019), but the "court can and
should enter judgment for a defendant when no such law or policy
is forthcoming," Dzwonar, 828 A.2d at 901.

In her complaint, Plaintiff attempts to identify laws and
public policy that relate to her complaints to administrators.
But Plaintiff's *post hoc* identification of those laws and
policies does not translate into what Plaintiff reasonably
believed at the time she voiced her concerns as pleaded in her
complaint.  Fairly read, Plaintiff's complaint merely recounts
her subjective belief that her assignments were beneath her.

With regard to Plaintiff's claim that James committed
official misconduct when he determined Plaintiff's classroom
assignments, Plaintiff does not allege that she voiced concerns
that James's actions were an abuse of his power that rose to a
criminal level.  "The crime of official misconduct serves to
insure that those who stand in a fiduciary relationship to the
public will serve with the highest fidelity, will exercise their
discretion reasonably, and will display good faith, honesty, and
integrity."  State v. Saavedra, 81 A.3d 693, 704 (N.J. Super.
Ct. App. Div. 2013).  "Unlike most crimes, as to which ignorance

13

of the law is not material, an essential element of official

misconduct is defendant's knowledge that the act he commits is

unauthorized."  Id. (citations and alterations omitted).  "In

order for a public servant to be aware that he or she is

committing an unauthorized act and thereby 'fairly expose'

himself or herself to prosecution for official misconduct,

'there must be an available body of knowledge by which the

[public servant] had the chance to regulate his conduct.  The

law must give a person of ordinary intelligence fair warning

what conduct is proscribed, so that he may act accordingly.'"

Id. (citations omitted).

There are no facts averred in Plaintiff's complaint that

suggest Plaintiff reasonably believed that James, as the

principal of the high school, was committing a crime by not

assigning Plaintiff to a self-contained special education

classroom of her preference.  And there are no facts averred to

show that Plaintiff voiced concerns to administrators that

James's classroom assignments and denial of transfer were

criminal acts for which she felt compelled to expose.  Moreover,

if Plaintiff's CEPA claim on this basis were credited, every

employment decision by every public official dissatisfactory to

one of his or her employees would constitute criminal official

misconduct.  Such a premise is absurd.

Similarly, Plaintiff's complaint contains no facts to

plausibly suggest that Plaintiff reasonably believed that James was violating the high school students' rights to an appropriate education guaranteed by the New Jersey constitution and federal law when he did not place her in a self-contained special education classroom teaching language arts and mathematics instead of a co-teaching classroom in health and science and a self-contained special education classroom in psychology.

Plaintiff believes she is highly qualified and her skills best utilized in certain classrooms and subjects, and it is a detriment to students who are not taught by her in this capacity. Plaintiff, however, does not plead facts to show that she reasonably believed, and so informed administrators, that students were not receiving the appropriate education guaranteed by the New Jersey constitution and federal law because they were (1) being taught by other teachers instead of her, and (2) being taught by her in James's assigned placements instead of the ones of her choosing. To the extent that Plaintiff informed administrators that she could not teach her psychology students effectively without the textbooks, such a claim still does not evidence that Plaintiff reasonably believed that her students' state constitutional rights and federal rights were being violated, and that she voiced that concern to her employer in that context. See Stark v. South Jersey Transp. Authority, 2014 WL 2106428, at *16 (N.J. Super. Ct. App. Div. 2014) (quoting

Regan v. City of New Brunswick, 305 N.J. Super. 342, 356, 702 A.2d 523 (App. Div. 1997) (internal citations and quotations omitted)) ("A CEPA plaintiff 'must show that his belief that illegal conduct was occurring had an objectively reasonable basis in fact - in other words that, given the circumstantial evidence, a reasonable lay person would conclude that illegal activity was going on.'").

Plaintiff's contention that she blew the whistle on James's equal protection violations fails for the same reason. Plaintiff claims that she complained about being denied a transfer to a different school even though a music teacher had been transferred, and she complained how other special education teachers had self-contained classrooms and she did not. Plaintiff pleads no facts, however, to suggest that she reasonably believed her constitutional rights were being violated by those actions.

Moreover, the underlying premise for Plaintiff's alleged "whistleblowing" is fatally flawed. "[T]he class-of-one theory of equal protection - which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review - is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to

exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action." Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 605 (2008). One can easily imagine the chaos and management challenges posed if a public school principal could be said to violate equal protection by not allowing every teacher in his or her school to choose their own schedules and classes.

Plaintiff's complaint also fails to sufficiently plead the second prong of a CEPA claim. Plaintiff alleges that her complaints about her assignments, denial of transfer, and lack of textbooks amounted to "whistleblowing" activity, but Plaintiff's allegations and the facts pleaded supporting them do not rise to the level of "offensive activity" that "pose[s] a threat of public harm." Instead, the facts and allegations pleaded, even when fully credited, simply amount as we have noted to a private dispute between a teacher and her principal over classroom assignments. Other than ramifications to herself, Plaintiff has not pleaded any facts to show that Plaintiff's teaching assignments and temporary lack of textbooks affected the public in any way such that Plaintiff's complaints

constituted protected whistleblowing activity under CEPA.[4]  See

Mehlman v. Mobil Oil Corp., 707 A.2d 1000, 1013 (N.J. 1998) ("A

salutary limiting principle [for a CEPA cause of action] is that

the offensive activity must pose a threat of public harm, not

merely private harm or harm only to the aggrieved employee.");

Maw v. Advanced Clinical Communications, Inc., 846 A.2d 604, 608

(N.J. 2004) ("We reaffirm the limiting principle enunciated in

Mehlman that the complained of activity must have public

ramifications, and that the dispute between employer and

employee must be more than a private disagreement."); Isetts v.

Borough of Roseland, 2005 WL 2334363, at *32 (N.J. Super. Ct.

Law Div. 2005) ("CEPA was not intended to cure all ills of the

employment relationship."); Beasley v. Passaic County, 873 A.2d

673, 685 (N.J. Super. Ct. App. Div. 2005) (explaining that

CEPA's purpose is to prevent retaliatory action against whistle-

---

[4] The Court also notes that "not everything that makes an
employee unhappy" is an actional CEPA claim.  Watts v. Township
of West Orange, 2018 WL 944023, at *5 (N.J. Super. App. Div.
2018) (citations omitted).  CEPA is not applicable to, for
example: (1) incidents that cause a "bruised ego or injured
pride"; (2) incidents that make an employee's job "mildly
unpleasant"; (3) "[w]orkplace conflict alone" "as embarrassing
and unpleasant as it may be"; (4) "insults and demeaning
statements"; (5) complaints about a job title, id. (citing
cases); (6) "a constant complainer who simply disagrees with the
manner in which" the employer is operating provided the
operation is lawful; and (7) a job assignment the employee
considers demeaning due to his age and experience, Klein v.
University of Medicine and Dentistry of New Jersey, 871 A.2d
681, 692 (N.J. Super. Ct. App. Div. 2005).

blowers, it is not to "assuage egos or settle internal disputes at the workplace"); Goode v. City of Camden Bd. of Educ., 2011 WL 2410304, at *3 (N.J. Super. Ct. App. Div. 2011) (dismissing the plaintiff's CEPA claim because, among other reasons, "[a]lthough plaintiff was dissatisfied with her assignments, which did not offer the type of teaching challenge she desired, she was neither denied the tools necessary to perform these alternative functions nor deprived of salary, tenure or benefits until a middle school science teaching position became available," "[p]laintiff was given assignments in each school that accommodated the needs of that school," and the "fact that she found these assignments unsatisfactory is not actionable").

Consequently, even accepting Plaintiff's factual allegations in the light most favorable to her and assuming their veracity, Plaintiff's allegations do not plausibly give rise to any actionable CEPA violations. Plaintiff's counts under CEPA must be dismissed. (Counts I – IV.)

**2. Plaintiff's First Amendment and Equal Protection claims**

Plaintiff claims that her complaints voiced to the affirmative action coordinator on September 30, 2017 constituted protected speech, and Defendants violated her free speech rights by not renewing her employment with the school district in May 2018. Plaintiff also claims that Defendants violated her Equal

Protection rights under the "class of one" theory because she was denied a transfer and a placement in a self-contained classroom, while other teachers were granted their transfer requests and assigned to self-contained classrooms.

As discussed above in the context of Plaintiff's CEPA claim, Plaintiff's Equal Protection claim fails as a matter of law. See, *supra*, page 16-17.

With regard to Plaintiff's First Amendment violation claim, it also fails. The Third Circuit has recently set forth the law on the standard for assessing a public employee's free speech claim:

> As a general rule, a public employee's speech is protected by the First Amendment "when (1) in making it, the employee spoke as a citizen[;] (2) the statement involved a matter of public concern[;] and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Hill, 455 F.3d at 241-42 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). A public employee does not speak "as [a] citizen[ ]" when he makes a statement "pursuant to [his] official duties." Garcetti, 547 U.S. at 421. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Rankin v. McPherson, 483 U.S. 378, 384-85 (1987) (quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983)).

Falco v. Zimmer, 2019 WL 1569564, at *8 (3d Cir. April 11, 2019).

Plaintiff claims that when she voiced her complaints to the affirmative action coordinator on September 30, 2017, she was

speaking as a citizen on a matter of public concern. (Docket
No. 1-3 at 15-16, Count V.) Plaintiff's legal conclusion as to
the nature of her speech is not supported by the factual
allegations in her complaint.

The "controlling factor" in determining whether a public
employee is speaking as a private citizen or not is whether the
statements were "made pursuant to [the speaker's] duties," that
is, whether such utterances were among the things that the
employee "was employed to do." Falco, 2019 WL 1569564, at *8
(quoting Garcetti, 547 U.S. at 424). As for whether the speech
involves a matter of public concern or private concern,
"[a]ctivity involves matters of public concern when it can be
fairly considered as relating to any matter of political,
social, or other concern to the community, or when it is a
subject of legitimate news interest; that is, a subject of
general interest and of value and concern to the public." Id.
(quoting Snyder v. Phelps, 562 U.S. 443, 453 (2011) (citations
and quotations omitted)). "By contrast, activity does not
involve a matter of public concern when it relates solely to
mundane employment grievances." Id. (citing Munroe v. Central
Bucks School Dist., 805 F.3d 454, 467 (3d Cir. 2015)).

Here, Plaintiff's complaint to the affirmative action
coordinator about her assignments and lack of textbooks
concerned her ability to effectively teach students to the best

of her capability and qualifications. These concerns, as
averred by Plaintiff in her complaint and accepted as true,
centered around her personal duties as a teacher employed by the
district and, as discussed above, and do not rise to the level
of a concern to the community as a whole. Plaintiff's own
characterization of her speech as coming from a citizen on a
matter of public concern does not overcome the facts pleaded in
her complaint, which compel the opposite conclusion.[5]
Consequently, Plaintiff's First Amendment and Equal Protection
claims must be dismissed.[6]

---

[5] Plaintiff's constitutional claims against the school district
also fail because in order to hold the school district – i.e.,
the City of Camden – liable for constitutional violations
brought pursuant to 42 U.S.C. § 1983, Plaintiff must allege that
the City had a policy or custom that violated Plaintiff's
constitutional rights. See GJJM Enterprises, LLC v. City of
Atlantic City, 293 F. Supp. 3d 509, 516 (D.N.J. 2017) (citing
Monell v. Department of Soc. Servs. of New York, 436 U.S. 658,
691 (1978)) (in a First Amendment violation case, explaining
that municipality is not liable under 42 U.S.C. § 1983 on a
*respondeat superior* theory, but a government entity may be
liable for its agent's actions upon a demonstration that a
policy or custom of the municipality caused, or was a "moving
force" behind, the alleged violation of a plaintiff's rights).
Plaintiff has failed to allege any policy or custom by the City
of Camden to support a Monell claim.

[6] Plaintiff's constitutional claims against James in his
individual capacity brought pursuant to 42 U.S.C. § 1983 must be
dismissed with prejudice because he is entitled to qualified
immunity. (Counts VI and VII.) "Qualified immunity shields
government officials from civil damages liability unless the
official violated a statutory or constitutional right that was
clearly established at the time of the challenged conduct."
Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012).
In order to determine whether a government official is entitled

**CONCLUSION**

The New Jersey Supreme Court has admonished that allowing a plaintiff's "private dispute with her employer to go forward under CEPA's rubric dilutes the statute's salutary goals." <u>Maw v. Advanced Clinical Communications, Inc.</u>, 846 A.2d 604, 608 (N.J. 2004). When viewing all of Plaintiff's factual allegations in her complaint as true, the concerns Plaintiff expressed to the school administrators were purely personal disagreements with the school principal as to her teaching assignments and teaching supplies. Plaintiff's actions, as she herself describes them in her complaint, do not qualify as an attempt to expose the principal's or school district's illegal activity or violations of public interest. All of Plaintiff's CEPA claims must be dismissed.

---

to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct? <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." <u>Id.</u> Here, Plaintiff has not pleaded any actionable constitutional violations under the First Amendment or Equal Protection clause against James. He is therefore entitled to qualified immunity and those claims must be dismissed with prejudice against him. <u>See</u> <u>Roth v. City of Hermitage</u>, 709 F. App'x 733, 736 (3d Cir. 2017) (explaining that a court must assess a motion to dismiss based on qualified immunity so that it can be determined whether claims should be dismissed with prejudice prior to assessing other bases for dismissal which would only provide a dismissal without prejudice).

The facts pleaded regarding Plaintiff's actions also do not constitute protected activity under the First Amendment, and her Equal Protection violations claim fails. Those claims must also be dismissed. Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim," but only if doing so would not be inequitable or futile. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). For the reasons articulated above, it would be futile to permit Plaintiff to file an amended complaint for her First Amendment and Equal Protection claims. Thus, the Court will not provide Plaintiff leave to file an amended complaint on those claims.

An appropriate Order will be entered.


Date: May 2, 2019          s/ Noel L. Hillman
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.